|   |   |   |
|---|---|---|
| LEO KRAMER, AUDREY KRAMER, | | Case No. 3:18-cv-00001-MMD-WGC |
| Plaintiffs, | | ORDER |
| v. | | (ECF Nos. 17, 22, 43) |
| JP MPRGAN CHASE BANK, N,A, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., NATIONAL DEFAULT SERVICING CORPORATION, WASHINGTON MUTUAL BANK, N.A., and DOES 1 THROUGH 50 INCLUSIVE, | | |
| Defendants. | | |

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

**I.     SUMMARY**

This action is in part an attempt by Leo Kramer ("Kramer") and Audrey Kramer (collectively "Plaintiffs") to prevent a non-judicial foreclosure of their property. (*See generally* ECF No. 1.) Before the Court, and among other motions, are two motions to dismiss Plaintiffs' complaint ("the Complaint"), pursuant to Fed. Civ. P. ("Rule") 12(b)(6), by Defendants JPMorgan Chase Bank, N.A. ("Chase") and Mortgage Electronic Registration Systems, Inc. (MERS). (ECF Nos. 17, 22.) Plaintiffs filed responses to Chase's motion to dismiss ("Chase's Motion") (ECF Nos. 28, 31), and Chase replied (ECF No. 38).

Additionally before the Court is Plaintiffs' motion to strike MERS's motion to dismiss ("MERS's Motion"). (ECF No. 43.) The Court has reviewed MERS's response (ECF No. 45) and Plaintiffs' reply (ECF No. 50).

For the reasons discussed below, Plaintiffs' motion to strike (ECF No. 43) is denied, and both motions to dismiss (ECF Nos. 17, 22) are granted.

## II. BACKGROUND

The following facts are derived from the Complaint and exhibits attached thereto, or are established by documents found in the public records (ECF Nos. 1, 17-6, 17-7, 17-8, 17-9, 17-11, 17-12, 17-13, 17-14)[1]:

In June 2005, Plaintiffs obtained a loan from Paul Financial, LLC ("Paul Financial") to purchase property located at 1740 Autumn Glen Street in Fernley Nevada (the "Property" or "Collateral Property"). (ECF No. 1 at 7, 52.) The loan was secured by a deed of trust ("First DOT") naming Paul Financial as the lender and MERS as beneficiary. (*See* ECF No. 1 at 51-53.) In May 2008, MERS substituted Executive Trustee Services, LLC ("ETS") as the trustee under the First DOT. (ECF No. 1 at 88-90.) Acting as the substituted trustee, ETS reconveyed the Property.[2] (*Id.* at 89.) Accordingly, the First DOT ceased to encumber the Property.

On May 1, 2008, Plaintiffs used the Property as collateral to obtain a $176,000 revolving line of credit (the "Loan") from Defendant Washington Mutual Bank, F.A. ("WaMu"). (ECF No. 1 at 6-8.) The deed of trust on the Property securing the WaMu Loan ("Second DOT") was publicly recorded. (*Id.* at 77.) In September 2008, the Federal Deposit Insurance Corporation ("FDIC") assumed receivership of WaMu and sold WaMu's assets and liabilities to Chase pursuant to a Purchase and Assumption Agreement ("the PAA").[3]

///

---

[1]The Court may take judicial notice of "matters of public record." *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)); *see also* Fed. R. Evid. 201.

[2] The Substitution of Trustee and Full Reconveyance effectively allowed for ETS to be substituted as successor trustee, and allowed ETS to reconvey the Property to "the person or persons legally entitled thereto all estate now held by [ETS] under [the First DOT,]" who would be Plaintiffs. (*See* ECF No. 1 at 52-53, 88; *see also id.* at 78 (Plaintiffs representing to Washington Mutual Bank that Plaintiffs owned the Property, and that the Property was unencumbered.))

[3]The Court takes judicial notice of the PAA, which is available on the FDIC's website, at https://www.fdic.gov/about/freedom/washington_mutual_p_and_a.pdf. *See,*

The PAA details that as part of Chase's acquisition, Chase obtained the rights and liabilities of WaMu, as lender and beneficiary, arising under all of the loan assets of WaMu, which would include the Second DOT. In November 2013, Chase substituted Defendant National Default Servicing Corporation ("NDSC") as trustee under the Second DOT. (ECF No. 1 at 9, 92.)

Kramer filed three bankruptcy petitions: Case No 10-43951, filed as a Chapter 11 petition in April 2010, but *converted to a Chapter 7 filing*; Case No 11-49493 filed as a Chapter 13 petition in September 2011; and Case No 14-42866, filed as a Chapter 13 petition in July 2014.[4,5] (ECF Nos. 17-6, 17-7, 17-8, 17-11, 17-12; *see also* ECF No. 1 at 10, 96-100, 102.) In schedules filed in Case Nos. 10-43951 and 14-42866, Kramer acknowledged the Loan was secured and that Chase held a security interest in the Collateral Property.[6] (ECF No. 17-7 at 4; ECF No. 17-12 at 4, 9; ECF No. 1 at 97.)

///

---

*e.g.*, *Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1093-94 (2009) (citing *New Mexico ex rel. Richardson v. BLM*, 565 F.3d 683, 702 n.22 (10th Cir. 2009) (taking judicial notice of data on web sites of federal agencies)). Because the PAA establishes only that Chase assumed WaMu's assets and liabilities, contrary to Plaintiffs' position, it is impertinent whether the link to the PAA, provided here, displays 39 pages, instead of 118 pages which Plaintiffs allege is the actual length of the PAA and has not been made public. Plaintiffs do not contest that the 39-page PAA is a public record, nor do they aver that the allegedly longer 118-page PAA contradicts the 39-page PAA in pertinent part. (*See* ECF No. 28 at 2-3.)

[4]The Court takes judicial notice of the bankruptcy proceedings, as identified in exhibits attached to Chase's Motion, because the proceedings are matters of public record. Plaintiffs do not challenge the authenticity of the bankruptcy case documents. (See *generally* ECF Nos. 28, 31.)

[5]The bankruptcy court dismissed Case No. 11-49493. (*See* ECF No. 17-8.)

[6]Plaintiffs' response to Chase's Motion asserts that Plaintiffs "naïve[ly]" and "inadvertently" listed Chase as having a security interest in Kramer's bankruptcy schedules. (*See* ECF No. 31 at 24.) Citing to "Exhibit I," Plaintiffs claim they "discovered through this process that their Note associated with the Loan was not assigned to Chase. (*Id.*) However, Exhibit I, which only displays Chase's billing statements, does not undermine Chase's security interest in the Collateral Property. Plaintiffs also identify an Exhibit H to support their claim that the "alleged debt" was listed as "non-secure" in the Chapter 7 bankruptcy. (ECF No. 31 at 4.) However, as noted *infra*, debt discharge does not also discharge a creditor's secured interest in collateral property. Further, Exhibit H lists the Collateral Property under "Schedule D – Creditors Holding Secured Claims," and notes Chase as a creditor. (ECF No. 31 at 166). Exhibit H also separately lists WaMu/Chase under "Schedule F-Creditors Holding Unsecured Nonpriority Claims," but

Chase filed a proof of claim regarding the Loan in both Case No. 14-42866 and Case No. 11-49493, before the latter's dismissal. (ECF No. 17-9; ECF No. 17-13; *see also* ECF No. 17-8.) To the proof of claims Chase attached a copy of the WaMu Mortgage Plus Agreement and Disclosure relating to the Loan (the "Note"), and the Second DOT. (*See* ECF No. 17-9 at 4-23; ECF No. 17-13 at 9-31.) In Case No. 14-42866, Kramer proposed a Chapter 13 plan wherein Chase was recognized as a Class 3 creditor, and Kramer was to surrender his interest in the Collateral Property upon plan confirmation. (ECF No. 17-14 at 3.) Kramer received discharges in both Case No. 10-43951 and Case No. 14-42866, on June 16, 2011, and January 9, 2017, respectively. (ECF No. 17-6 at 2, 13; ECF No. 1 at 11, 102.) At no point in the bankruptcy proceedings did Kramer assert claims against any of the Defendants herein. Nor did Kramer seek to have the lien evidenced in the Second DOT stripped from the Property to render the Loan "unsecured."

In October 2017, NDSC recorded a Notice of Default and Election to Sell Under the Deed of Trust. (ECF No. 1 at 11, 105.) In January 2018, Plaintiff initiated this action. The Complaint alleges fifteen (15) causes of action against "all Defendants," challenging the impending foreclosure (*see generally* ECF No. 1) and requesting damages (*id.* at 12). The Complaint does not allege that the Loan has been paid or that Plaintiffs are not in payment default under the terms of the Loan.

Chase moves for dismissal, contending, *inter alia*, Plaintiffs are judicially estopped from asserting claims in this Court against Chase and the various Defendants. (*See* ECF No. 17.) MERS argues it is entitled to dismissal because MERS had "no interest in transactions that allegedly give rise to Plaintiffs' claims." (ECF No. 22 at 3.) The Court finds that dismissal with prejudice is warranted as to all Defendants, on all of Plaintiffs' claims, as amendment would be futile.[7]

///

nonetheless notes the claim as "Secured Credit Line," and does not list the Collateral Property (*id.* at 170).

[7]The Court takes note of Plaintiffs' argument that certain issues raised by Chase's Motion can be cured by the Court permitting amendment to the Complaint (ECF No. 31 at

4

## III. PLAINTIFFS' MOTION TO STRIKE MERS'S MOTION TO DISMISS

Plaintiffs' motion to strike is premised on their contention that MERS failed to serve its Motion in time for Plaintiffs to respond (*see* ECF No. 43 at 2), and that therefore Plaintiffs' right to due process was undermined (*id.* at 5; ECF No. 50 at 2). The Court disagrees.

On January 23, 2018, this Court ordered MERS to respond to the Complaint within twenty days after Plaintiffs posted their required security. (ECF No. 13.) Plaintiffs made their cash deposit on February 21, 2018. (ECF No. 15.) MERS filed its Motion on March 12, 2018, within the twenty-day deadline. (*Compare* ECF No. 22 *with* ECF No. 13 *and* ECF No. 15.) MERS's Motion includes a certification that MERS's Motion was served on Plaintiffs by mail at the address Plaintiffs provided in the Complaint. (ECF No. 22 at 7; *see also* ECF No. 45 at 2.) Plaintiffs filed the motion to strike MERS's Motion on April 6, 2018. (*See* ECF No. 43.)

The day before Plaintiffs filed the motion to strike, MERS's counsel and Plaintiffs had exchanged emails wherein MERS, in addition to noting it had complied with its servicing obligations by mail, was "agreeable to setting a schedule for [Plaintiffs] to file a response to [MERS's Motion]." (ECF No. 45-1.) MERS expressed it was "agreeable" given Plaintiffs' claim of lack of receipt by mail. (*Id.*) MERS had also sent Plaintiffs a copy of its Motion by email on April 3, 2018. (ECF No. 43 at 4.) It appears Plaintiffs chose to file the instant motion to strike instead of accepting MERS's proposal.

The Court finds no merit to Plaintiffs' claim that MERS needed to engage in good faith effort to "meet and confer" before filing its Motion. (ECF No. 43 at 2, 6, ECF No. 50 at 5.) In support of this claim, Plaintiffs cite to LR IA 1-3(f). (ECF No. 43 at 2.) However, neither LR IA 1-3(f) nor any rule of which the Court is aware requires parties to meet and confer prior to filing a motion to dismiss.

///

///

---

6), but ultimately finds these other issues irrelevant in light of the application of the judicial estoppel bar.

5

Under the circumstances here, the Court disagrees with Plaintiffs that their right to due process was undermined by not having sufficient time to respond. This is really a problem of Plaintiffs' own choosing. Plaintiffs opted to file a motion to strike instead of working with MERS to give Plaintiffs more time to respond. Moreover, Plaintiffs provide no evidence contradicting MERS's attestation that it timely mailed its Motion.[8] Accordingly, Plaintiffs' motion to strike (ECF No. 43) is denied

**IV.     THE MOTIONS TO DISMISS**

    **A.     Legal Standard**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's

///

---

[8] MERS' Motion was filed on the Court's docket. (ECF No. 22.) The next day, the Court issued a notice of the filing of a motion to dismiss and the need for the opposing party (i.e., Plaintiffs) to respond. (ECF No. 25.) Even if Plaintiffs did not receive a copy of MERS' Motion, the Court's notice should have alerted Plaintiff of the filing of such a motion.

complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

Ordinarily, a complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)). But, allegations in *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers and must be liberally construed. *See Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n.19 (9th Cir.1990). Where "matters outside the pleading are presented to and not excluded by the court," a Rule 12(b)(6) motion is to "be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Rule 12(b).

There are three exceptions to this rule: (1) a court may consider documents "'properly submitted as part of the complaint' on a motion to dismiss;" (2) if "documents are not physically attached to the complaint," incorporation by reference is proper "'if the documents' authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them," *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998)); and (3) "a court may take judicial notice of 'matters of public record.'" *Id.* (quoting *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

///

### B. Chase's Motion

Chase argues that Plaintiffs are judicially estopped from asserting claims against it, as well as the other Defendants, because Plaintiffs failed to provide notice of their claims during the bankruptcy proceedings. (ECF No. 17 at 12-13.) The Court agrees.

"Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001) (citing *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992)) (additional citations omitted). In bankruptcy proceedings, potential claims a debtor may have against a creditor or lender are deemed assets. *See Hamilton v*, 270 F.3d at 785 (noting the debtor plaintiff's failure to list potential claims against creditor as an asset); *Hay,* 978 F.2d at 556 (the debtor plaintiff conceding its action is an asset of its bankruptcy estate). While *Hay* and *Hamilton* are summary judgment cases, there is no reason their analysis and conclusion would not apply in this case. Both cases support the proposition that judicial estoppel should be applied here.

In *Hay*, the Ninth Circuit recognized that *while the plaintiff did not know all the facts,* the plaintiff *knew enough* to require notification of the asset (the action/suit against a creditor) to the bankruptcy court. 978 F.2d at 557. The Ninth Circuit ruled that the plaintiff's failure to give the required notice estopped the plaintiff and justified the district court's grant of summary judgment to the defendants. *Id.*

*Hamilton* additionally recognized that it is immaterial that a debtor commences an action against a creditor or lender after filing for bankruptcy. 270 F.3d at 784. "The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding." *Id.* at 785 (citations omitted). *Hamilton* also explains that courts "must invoke judicial estoppel to protect the integrity of the bankruptcy process," which includes preventing a debtor from deceiving the bankruptcy court, and acquiring an "unfair advantage" due to having enjoyed "the

8

1 benefit of both an automatic stay and a discharge of debt in the debtor's Chapter 7
2 bankruptcy proceeding." *Id.*

3 The rulings and reasoning in *Hay* and *Hamilton* compel this Court to dismiss the
4 Complaint. Here, as noted, Kramer was involved in Chapter 7 and Chapter 13 proceedings
5 and received discharges. (ECF No. 17-6; ECF No. 1 at 11, 102.) Moreover, the Complaint
6 is grounded in the assertions that the Collateral Property that secured the Loan was part
7 of the bankruptcy proceedings and cannot be foreclosed upon, due to alleged fraud and
8 irregularities, and that the Second DOT should be stripped from it. (*See* ECF No. 1.) The
9 judicially noticed records show that during both the Chapter 7 and 13 bankruptcy
10 proceedings Kramer acknowledged Chase's acquired security interest in the Collateral
11 Property. (ECF No. 17-7 at 4; ECF No. 17-12 at 4,9; ECF No. 17-14 at 3; ECF No. 1 at
12 97.) The July 2014 Chapter 13 plan in Case No. 14-42866 called for Kramer to surrender
13 his interest in the Collateral Property to Chase. (ECF No. 17-14 at 3.)

14 Kramer (and by extension the Plaintiffs) knew sufficient facts by which he could
15 anticipate a cause of action against Chase, especially given Kramer's now evident
16 reservations about actually surrendering the Collateral Property. While bankruptcy
17 discharge covering the Loan extinguished Kramer's personal liability for the Loan,
18 bankruptcy discharge does not prevent foreclosure on the Collateral Property. *See Long*
19 *v. Bullard*, 117 U.S. 617, 621 (1886); *accord Dewsnup v. Timm*, 502 U.S. 410, 417 (1992)
20 ("the creditor's lien stays with the real property until the foreclosure"); *Farrey v. Sanderfoot*,
21 500 U.S. 291, 297 (1991) ("Ordinarily, liens and other secured interests survive
22 bankruptcy."); *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("[A] bankruptcy
23 discharge extinguishes only one mode of enforcing a claim—namely, an action against
24 the debtor *in personam*—while leaving intact another—namely, an action against the
25 debtor *in rem*.").

26 Additionally, during the 2014 Chapter 13 bankruptcy proceeding, Kramer knew, or
27 should have known, that Chase substituted NDSC as the trustee under the Second DOT,
28 as the substitution occurred in November 2013. (*See* ECF No. 1 at 9.) Therefore, Kramer

1  (and by extension the Plaintiffs) knew enough to trigger his obligation to provide the
2  bankruptcy court notice of his potential claims against Chase, WaMu, and NDSC.[9] Equity
3  demands that Plaintiffs be judicially estopped from now asserting claims against these
4  Defendants in this Court to avoid foreclosure on the Collateral Property. To rule otherwise
5  would be to allow Kramer to circumvent the bankruptcy process.

In sum, the Court finds that Plaintiffs are judicially estopped from asserting the claims here against Chase, WaMu and NDSC. Claims against these Defendants will be dismissed.

**C.    MERS's Motion**

The Court finds the Complaint is improperly instituted against MERS because MERS was not involved in the loan transaction giving rise to the claims asserted in the Complaint. Although Plaintiffs have not filed a response to MERS's Motion, a response is unnecessary given the fact that MERS was not involved in the Loan or the Second DOT. The loan transaction involving MERS was resolved when ETS executed the reconveyance of the Property. Moreover, the "robo-signing" and substitution of trustee claims asserted against MERS (ECF No. 1 at 8-9) have no merits. *See, e.g., Heidig v. PNC Bank N.A.*, 2017 WL 4102465, *3 n.6 (D. Nev. Sept. 15, 2017) (stating with respect to the plaintiffs' theory challenging assignments based on a "robo-signing" argument, "the Ninth Circuit has affirmed that a borrower lacks standing to allege such an argument because the borrower does not suffer an injury from the robo-signing"); *Closson v. Reconstruct Co.*, No. 2:11-cv-00146-KDJ-RJJ, 2012 WL 893746, at *3-5 (D. Nev. Mar. 15, 2012) (holding that trustee was properly substituted by MERS because MERS has the right to substitute a new trustee in its capacity as nominee).

///
///
///

---

[9] Chase essentially stands in the place of WaMu as the acquirer of WaMu's assets and liabilities (specifically the Note and Second DOT), and Chase substituted NDSC as the trustee under the Second DOT.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Plaintiffs' motion to strike MERS's Motion (ECF No. 43) is denied.

It is further ordered that Chase and MERS's motions to dismiss (ECF Nos. 17, 22) are granted.

It is further ordered that Plaintiffs' pending motions (ECF Nos. 30, 46, 55, 56) and objection (ECF No. 55) are denied as moot.

The Clerk is directed to enter judgment accordingly and close this case.

DATED THIS 17th day of May 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE